Hillsborough,
No. 6044.

STATE

*v.*

WALTER D. LANGLAIS.

April 5, 1971.

*Warren B. Rudman,* Attorney General, and *Henry F. Spaloss,* Assistant Attorney General ( *Mr. Spaloss* orally ), for the State.

*Paul A. Rinden* and *Leonard J. Merski* ( *Mr. Rinden* orally ), for the defendant.

LAMPRON, J. Indictment, under RSA 580:1, charging that the defendant, on or about March 18, 1968, with intent to cheat and defraud, fraudulently induced Emile Chagnon, Jr., Assistant Treasurer and General Manager of Chagnon Lumber Company, to convey to him goods and materials of the Company to the value of $6000 by representing that a promissory note and accompanying mortgage, executed by Frank and Mary Higham payable to Ro-Lan Builders and Developers Inc., which defendant assigned to Emile Chagnon, Jr., was an unpaid obligation then owed to the defendant which representation was in fact untrue, as it had been paid in full to him, a fact which the defendant knew.

Trial by jury resulted in a verdict of guilty. Defendant's exceptions, to the denial of his motion to quash the indictment and of his various motions to dismiss; to the court's rulings on evidence and to portions of the charge; and to his motion to set

aside the verdict, were reserved and transferred by *Dunfey,* J.

The State had the burden of proving beyond a reasonable doubt that the defendant with intent to cheat and defraud Chagnon Lumber made a representation of fact which was untrue and known to him to be such and which was calculated to mislead and did mislead Chagnon and induced it to part with certain of its goods and materials. *State* v. *Story,* 97 N. H. 141, 149, 83 A.2d 142 ( 1951 ); 32 Am. Jur. 2d False Pretenses *s.* 12.

The parties agreed at pretrial that the promissory note and mortgage in question in the amount of $9000 payable to Ro-Lan Builders and Developers, Inc., of which the defendant was president and treasurer, was executed by the Highams on or about November 7, 1967. They also agreed that at some time the note and mortgage was assigned by the defendant to Chagnon. Defendant admits that the note was paid to him in full on January 2, 1968. The parties are in disagreement, however, as to when the assignment to Chagnon took place.

The defendant maintains it occurred in November 1967 and that it was assigned to secure a note also in the amount of $9000 given by Ro-Lan to Chagnon at approximately the same time. The defendant also contends that when the Highams paid their note to him, on January 2, 1968, he then made a payment of $5000 by check to Chagnon and told Emile Chagnon it was Higham money. Defendant testified that he knew this payment was not applied against Ro-Lan's $9000 note but he did not " have any control over how the Chagnon Lumber Company treated or credited the payments to it. "

The State produced evidence that Ro-Lan's $9000 note was endorsed by Chagnon, discounted, and the amount credited, on November 9, 1967, to Ro-Lan's open account. There were introduced in evidence renewal notes which showed that this note had been renewed in the original amount each succeeding month from December 1967 through April 1968. These renewal notes were signed by the defendant. There was also evidence that the $5000 payment made by the defendant on January 2, 1968 was not on Ro-Lan's $9000 note but to cover a check in that amount given to Chagnon and credited to Ro-Lan's open account on December 28, 1967 but returned for insufficient funds.

There was also evidence that when the March 1968 renewal of Ro-Lan's $9000 note was due to be made, Chagnon advised the defendant that the note would not be renewed forever. Since

there had been additional materials delivered he was told that the open account was closed, no further credit was to be extended to Ro-Lan, and all deliveries were stopped. It was testified that there were no deliveries made for a period of time even though there were unfilled orders outstanding. There was evidence that defendant then made an assignment to Chagnon of the Higham note and mortgage and as a result deliveries of goods and materials were resumed and they amounted to over $6000. We hold that the jury could find beyond a reasonable doubt that the Higham note and mortgage was assigned by the defendant to Chagnon in March 1968, and not in November 1967 as contended by the defendant, and that reliance thereon induced Chagnon to deliver the additional goods and materials to Ro-Lan.

The evidence is uncontradicted that the Highams had executed two sets of the note and mortgage given to Ro-Lan in November 1967, one set for Ro-Lan, one set for them. It is also undisputed that when the full amount of the note was paid to the defendant on January 2, 1968 by a check made out to his order at his request, defendant receipted only the set held by the Highams and that he retained Ro-Lan's set of the instruments. There was evidence that he and the Highams celebrated the payment by having " a drink on it ".

There was testimony also that Ro-Lan was in financial difficulties in March 1968. Its bookkeeper testified that at that time the defendant came to the office upset and told her " he couldn't get a thimble out of Chagnon. His credit was cut off. Stopped. " He informed her that he was going to give Chagnon a mortgage on the Higham home to get more credit which was " the same mortgage that had been paid off. " She further testified " he had asked me not to let this out of the office. " Emile Chagnon also testified that the defendant had asked him not to notify the Highams of the assignment. It is unnecessary to decide whether this fact would nullify the assignment as contended by the defendant since if the transfer was relied on by Chagnon and induced it to part with its goods it would constitute a false pretense whether the assignment was legally valid or not. 2 Burdick, Law of Crime s. 646 ( 1946 ).

Without further detailing the evidence, we hold that the record warranted a finding by the jury that beyond a reasonable doubt on the date charged in the indictment the defendant with

intent to cheat and defraud Chagnon fraudulently induced it to part with goods and materials in the amount of $6000 by means of the assignment of the Higham note and mortgage which he falsely represented was a valid obligation although he knew this to be untrue. *State* v. *Story,* 97 N.H. 141, 83 A.2d 142 ( 1951 ); RSA 580:1.

The defendant argues that because the materials obtained were delivered to Ro-Lan, a corporation of which he was president and treasurer, and not to him personally that the State has failed to prove the charge of false pretenses which was brought against him. The law is well established that the essence of the offense is the causing of another to part with something of value by fraudulent means with an intent to defraud. It is immaterial if this end is accomplished by inducing the delivery of goods to be made to the defendant or to another. *State* v. *Story,* 97 N. H. 141, 143, 83 A.2d 142, 144 ( 1951 ); *State* v. *Urie,* 92 Idaho 71, 437 P.2d 24 ( 1968 ); *State* v. *Deschambault,* 159 Me. 223, 191 A.2d 114 ( 1963 ); 2 Burdick, Law of Crime *s.* 638 ( 1946 ); 35 C.J.S. False Pretenses *s.* 25 ( 1960 ).

Defendant's contention that there was a substantial variance between the indictment and the proof adduced was considered and found to be without merit. *State* v. *Rousten,* 84 N.H. 140, 142-43, 146 A. 870, 871-72 ( 1929 ); *Fisher* v. *State,* 161 Ark. 586, 256 S.W. 858 ( 1923 ); *see* 5 Wharton, Criminal Law and Procedure *s.* 2058 ( R.A. Anderson ed. 1957 ); 41 Am. Jur. 2d Indictments and Informations *s.* 262 ( 1968 ).

*Exceptions overruled.*

All concurred.